# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Donna M. Klampfer, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 540 C.D. 2017 |
| | : | Submitted: December 8, 2017 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: February 1, 2018**

Donna M. Klampfer (Claimant), representing herself, petitions for review from an order of the Unemployment Compensation Board of Review (Board) denying her unemployment compensation (UC) benefits under Section 402(e) of the UC Law (Law).[1]  Claimant argues she did not commit willful misconduct when she called off work for medical reasons because her absences related to her cardiac condition, for which she had approved medical leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§2601-2654.[2]  She asserts her illness was good cause to call off work.  She also emphasizes her inability to obtain a doctor's note before her discharge.  Under these circumstances, Claimant's four call offs in the two weeks

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(e) (relating to willful misconduct).

[2] The FMLA allows an employee to take 12 weeks of unpaid leave in 12 months for her own serious health condition when it interferes with her ability to work.  29 U.S.C. §2612(a)(1)(D).

following her medical leave do not rise to the level of willful misconduct. Accordingly, we reverse.

## I. Background

Claimant worked for Allied Barton Security Service (Employer) as a command center operator on the night shift beginning in 2010. One year later, she was diagnosed with a heart condition that ultimately required corrective surgery. In May 2016, she requested FMLA leave for her cardiac surgery and post-operative recovery. Employer approved her medical leave starting the week of June 23, 2016. Prior to her approved medical leave, Claimant reduced her schedule to part-time.

Employer scheduled Claimant to work 12 consecutive hours on the third shift on September 23, 2016, for her first day back at work after FMLA leave. However, she called off work that day because she was not feeling well. Referee's Dec., 12/7/16, Finding of Fact (F.F.) No. 4; see Certified Record (C.R.), Item No. 3, Employer Disciplinary Action Counseling Form (Attendance Form), 9/26/16 (reason for absence was "illness"). She spoke with her manager, Michael Cain (Manager), about her condition. Claimant worked her next scheduled shift the following day.

That same week, on September 30, Claimant called off work again because she was not feeling well enough to work. See id., Attendance Form, 10/3/16. She called off work the next day for the same reason. Id. Shortly thereafter, on either "October 1 or 2," Manager warned her that she needed a doctor's note to support her continued absences or he could not excuse them. Ref. Hr'g, Notes of Testimony (N.T.), 12/6/16, at 6; see F.F. No. 6. She advised Manager she attempted to obtain a note from her physician, but that "she may not get it for another week …." N.T. at 8.

2

After receiving Manager's warning, Claimant called off work the fourth time on October 7, 2016. F.F. No. 5. By the time her doctor provided a note, Employer advised her via text message that termination papers were in the mail. Employer terminated Claimant's employment for these four absences for violation of its attendance policy (Policy). F.F. No. 9.

Claimant applied for UC benefits with the local service center, which denied benefits. Claimant appealed.

A referee held a hearing. Claimant, unrepresented by counsel, testified on her own behalf. Employer, also unrepresented, presented the testimony of Manager, who explained the Policy and his communications with Claimant.

Relevant here, the Policy provides that four "chargeable actions within a 90-day period will result in termination." C.R., Item No. 3 (Policy at 3). The Policy also provides that "consecutive multiple days off for an illness, with documentation, generally count as one chargeable action." Id. at 2. Additionally, it states, "approved … Leaves of Absence, including FMLA leave, will not be 'chargeable.'" Id. at 3.

Manager testified he verbally warned Claimant after her second call off that without a doctor's note, Employer would discipline her for violating the Policy. After three call offs, Manager texted Claimant that he would excuse her absences with a doctor's note. N.T. at 11. When he informed Human Resources that Claimant advised "she couldn't get the doctor's note right away," he was directed to discharge her. Id. He added, "[s]he was a valuable employee to me, but policy's policy." Id.

3

Claimant confirmed she was aware of the Policy. N.T. at 7. She called off work because she did not feel well. Specifically, she described, "my heart rate was going up. I was feeling faint, lightheaded. I was told because of my existing condition that if anything like that occurs to just like, you know, lay down for a while, get some rest, which I did." N.T. at 9. She acknowledged that after her second call off, Manager informed her that Employer "would have to probably terminate [her]" if she could not present a doctor's note. Id. at 8. Claimant attempted to obtain a note from her doctor by calling his office and leaving messages. Claimant obtained a note the day after receiving notice of her discharge via text message. Without objection, the referee admitted the doctor's note at the hearing.

The referee determined Claimant was ineligible for UC benefits under Section 402(e) of the Law. The referee made the following pertinent findings:

> 2. [E]mployer's time and attendance policy provides that where employees call out from 4 or more assigned shifts in a 90-day period, the consequence will be termination of employment.
>
> 3. [C]laimant was or should have been aware of [E]mployer's policy in this regard.
>
> 4. On September 23, 2016, [C]laimant was scheduled to return from [an] approved leave of absence, but reported off because she was not feeling well enough.
>
> 5. On September 30, 2016, October 1, 2016, and October 7, 2016 respectively, [C]laimant again reported off for scheduled shifts.
>
> 6. After [C]laimant's 2nd call out on September 30, 2016, [E]mployer reminded [C]laimant of its policy.
>
> 7. [E]mployer asked [C]laimant to get a doctor's note for her previous absences so the absences would not lead to discipline.

4

8. [C]laimant failed to provide [a] doctor's note to [E]mployer.

9. On October 7, 2016, [E]mployer discharged [C]laimant for violation of its attendance policy.

Referee's Dec., Findings of Fact (F.F.) Nos. 2-9. Claimant appealed to the Board.

On appeal, Claimant argued the referee disregarded that Claimant's absences constituted only one chargeable offense because they all related to the same illness. C.R., Item No. 10. She also requested a remand hearing to submit additional evidence, including doctor's notes discussing possible flare-ups during her recovery.

Ultimately, the Board adopted the referee's findings and conclusions, and it determined Claimant was ineligible for UC benefits. The Board reasoned: "[C]laimant did not receive a note from her doctor until October 14, 2016, two weeks after she knew she needed it and one week after she was discharged. Even then, [C]laimant did not notify [E]mployer to see if she could be rehired." Bd. Op., 3/3/17, at 1. The Board also did not consider the additional evidence Claimant submitted,[3] noting: "[C]laimant had an opportunity to present this evidence at the hearing, but failed to do so." Id. Therefore, the Board denied Claimant's request for a remand hearing.

Claimant filed a motion for reconsideration, which the Board denied. Claimant now petitions for review from the Board's decision on the merits.

---

[3] The certified record does not contain the additional evidence Claimant submitted to the Board.

## II. Discussion

On appeal,[4] in her uncounseled brief, Claimant argues the Board erred in determining her four medical absences constituted willful misconduct. She asserts she attempted to obtain the requested doctor's note to excuse her absences. However, based on circumstances beyond her control, she was unable to do so before her discharge. She also contends she had good cause for calling off work based on her documented illness.

Claimant does not dispute the material facts, that she called off for four shifts when she was ill without providing a doctor's note. She also does not contest that this conduct was cause for discharge under the Policy. Nevertheless, she maintains her inability to return to work when scheduled because she needed more recovery time than anticipated did not constitute willful misconduct under the Law.

Pursuant to Section 402(e) of the Law, 43 P.S. §802(e), a claimant is ineligible for UC benefits when an employer discharges her for willful misconduct. The Law does not define "willful misconduct." Appellate courts define "willful misconduct" in the UC context as: "(a) wanton or willful disregard for an employer's interests; (b) deliberate violation of an employer's rules; (c) disregard for standards of behavior which an employer can rightfully expect of an employee; or[,] (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations." Grieb v. Unemployment Comp. Bd. of Review, 827 A.2d 422, 425 (Pa. 2003).

---

[4] "Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006, 1013 n.2 (Pa. Cmwlth. 2014).

An employer bears the initial burden of showing a claimant's conduct rose to the level of willful misconduct. Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006 (Pa. Cmwlth. 2014). Once the employer proves willful misconduct, the burden then shifts to the claimant to show good cause for her actions. Id.

The issue of whether a claimant's conduct constituted willful misconduct is a question of law fully reviewable by this Court. Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review, 949 A.2d 338 (Pa. Cmwlth. 2008).

## A. Willful Misconduct

At the outset, we emphasize we are not presented with the propriety of Claimant's discharge under the Policy. We are tasked with determining whether Claimant's four call offs from work within the two weeks following her medical leave constitute willful misconduct so as to render her ineligible for UC benefits.

An employer seeking to prove willful misconduct by a policy violation must demonstrate the existence of the policy, its reasonableness, and its violation. Guthrie v. Unemployment Comp. Bd. of Review, 738 A.2d 518 (Pa. Cmwlth. 1999). "The employer must also show that the employee intentionally or deliberately violated the work rule." Chester Cmty. Charter Sch. v. Unemployment Comp. Bd. of Review, 138 A.3d 50, 54 (Pa. Cmwlth. 2016) (emphasis added). This Court "must determine if the work rule is reasonable in light of all the circumstances and whether [a claimant] had good cause to violate the work rule." Caterpillar, Inc. v. Unemployment Comp. Bd. of Review, 703 A.2d 452, 459 (Pa. 1997).

Claimant concedes the Policy exists, and that she violated its terms. Therefore, we consider the circumstances of her policy violation, including whether it was deliberate.

Employer discharged Claimant for violating the Policy by calling off work four times in 90 days. That she called off because of illness was immaterial. The Policy provides: "Termination will result if … you have 4 chargeable actions relating to attendance within a rolling 90[-]day period." C.R., Item No. 3. Chargeable actions include chargeable absences, defined as "call offs for anything other than a death in the family." Id. The Policy does not exempt absences for illness; however, it states "consecutive multiple days off for an illness, with documentation, generally count as one chargeable action." Id. (emphasis added).

The alleged misconduct here is comprised of Claimant's four absences in a 90-day period. Although the Board focused on Claimant's failure to provide a doctor's note prior to her discharge, that conduct did not violate the Policy, and it was not the reported grounds for her discharge. The Policy did not require a doctor's note; a note merely reduced consecutive chargeable absences to one chargeable action. Additionally, the Policy did not specify a timeframe for submitting documentation of an illness.

Significantly, it is undisputed that Claimant's four absences were due to illness. Claimant called off for her first shift of 12 consecutive hours following her medical leave for open-heart surgery and post-operative recovery. The referee found that Claimant called off work the first time because she "was not feeling well." F.F.

No. 4. Employer likewise did not contest that Claimant's illness was the reason for her other three absences. Employer's separation documentation lists the reason for all four absences as "illness." C.R., Item No. 3 (Attendance Forms).

"[T]he law is clear that absence due to illness is not <u>willful</u> misconduct." <u>Green v. Unemployment Comp. Bd. of Review</u>, 433 A.2d 587, 589 (Pa. Cmwlth. 1981) (emphasis added) (reversing Board determination that claimant's seven absences constituted willful misconduct when some absences related to sickness); <u>see</u> <u>Tritex Sportwear, Inc. v. Unemployment Comp. Bd. of Review</u>, 315 A.2d 322 (Pa. Cmwlth. 1974). When the violation of an employer's absence policy is grounds for termination, and the policy makes no distinction between absences for illness and absences for other reasons, we do not discern willful misconduct based on the policy violation alone. <u>Green</u>.

This case is similar to <u>Green</u> in that the reason for discharge was reaching a ceiling of unauthorized absences within a certain timeframe. There, the claimant was discharged because he reached the terminable threshold of 8 absences in a 12-month period. The employer's policy permitted termination for any unauthorized absences, without differentiating for absences caused by illness. The claimant argued that while his absences, five of which related to illness, may have been grounds for discharge, they did not constitute willful misconduct under the Law. We agreed.

This Court reasoned that the Board erred in counting the claimant's illness-related absences as a deliberate disregard for the employer's interests. Despite the claimant receiving warnings about being close to the terminable threshold of

9

absences, we emphasized the "distinction between cause for dismissal under an employer's policy and disqualifying conduct under the [Law]." Green, 433 A.2d at 589. Because there was no willfulness in the claimant's policy violation when he was absent as a result of his illness, we held he did not commit willful misconduct.

Here, as in Green, we discern no willfulness in Claimant's violation of the Policy when she was absent four times within 90 days as a result of her illness. When a claimant violates a policy because of her illness, we do not ascribe deliberate disregard to her violation. See Phila. Parking Auth. v. Unemployment Comp. Bd. of Review, 1 A.3d 965 (Pa. Cmwlth. 2010) (inadvertent violation of employer's rule does not constitute willful misconduct). While such absences may be a reason for discharge, they are not a reason for a denial of UC benefits. Runkle v. Unemployment Comp. Bd. of Review, 521 A.2d 530 (Pa. Cmwlth. 1987); Green. That Manager warned Claimant about potential discipline as a result of her absences without documentation does not alter our conclusion.

The evidence reflects Claimant attempted to obtain a doctor's note and discussed her difficulty in obtaining one with Manager. N.T. at 6, 8-10. Indeed, Claimant eventually obtained a doctor's note as requested, but was unable to do so within the week between her third call off and her discharge. Her attempts to obtain the doctor's note within a week's time, while unsuccessful, did not evince a willful disregard of Manager's request for documentation. See Bogan v. Unemployment Comp. Bd. of Review, 447 A.2d 708 (Pa. Cmwlth. 1982) (claimant's inability to obtain excuse for illness prior to discharge did not constitute willful misconduct).

10

Further, we consider an application of the Policy here, so as to render Claimant ineligible for UC benefits, unreasonable. As we recently explained in an unpublished decision authored by the Honorable James G. Colins, violation of an employer's sick leave policy may be valid cause for discharge, but not for a denial of UC benefits. Phila. Parking Auth. v. Unemployment Comp. Bd. of Review (Pa. Cmwlth., No. 609 C.D. 2015, filed November 17, 2015), 2015 WL 7356313 (unreported) (holding employer unreasonably applied policy to claimant who had serious health condition). In Philadelphia Parking Authority, the claimant reached her maximum sick leave under the policy, such that additional sick days led to discipline. As a result, she requested and received approved FMLA leave. Nonetheless, the employer discharged her for noncompliance with its sick leave policy. In concluding the claimant did not commit willful misconduct, we explained, "apply[ing] its regular policy for employees who have called in sick, to an employee who has requested, certified, and received leave under the FMLA is not reasonable." Id., slip op. at 9, 2015 WL 7356313, *5.

The Policy here permits the discharge of an employee who is ill four times within a 90-day period regardless of the circumstances. Claimant is recovering from open-heart surgery. Claimant was absent because of illness four times in the two weeks following her medical leave. In light of these circumstances, Employer did not prove Claimant's absences rose to the level of willful misconduct. Runkle; Green.

Because Claimant's absences due to illness do not show a deliberate disregard for Employer's interests, the Board erred as a matter of law in determining that Claimant's four call offs within 90 days constituted willful misconduct.

11

**B. Good Cause**

"Good cause" is established when a claimant's actions are justified or reasonable under the circumstances. Bruce v. Unemployment Comp. Bd. of Review, 2 A.3d 667 (Pa. Cmwlth. 2010). Because Employer did not establish that Claimant committed willful misconduct, we need not reach whether Claimant had good cause. Nevertheless, we recognize that a claimant with a documented illness has good cause for her absences. See, e.g., Phila. Parking Auth., 1 A.3d at 968 ("Physical illness can constitute good cause for a claimant's noncompliance with an employer's directive.").

Here, Claimant underwent open-heart surgery, for which Employer approved FMLA leave to allow her recovery. There is no dispute that the reason for Claimant's four chargeable absences was illness. The referee credited Claimant's testimony that she called off her first shift because she did not feel well. F.F. No. 4.

Regardless, Claimant's uncontradicted testimony is sufficient evidence to establish good cause. Roberts v. Unemployment Comp. Bd. of Review, 977 A.2d 12 (Pa. Cmwlth. 2009) (reversing Board; holding claimant had good cause for rule violation under the circumstances based on claimant's uncontradicted testimony). A claimant is not required to produce medical testimony to substantiate her illness; her own uncontradicted testimony is competent evidence of her illness. Phila. Parking Auth., 1 A.3d 965.

Here, Claimant's testimony is corroborated by the fact of her FMLA leave, and her submission of a doctor's note from her cardiologist. Employer did

12

not dispute Claimant's illness. Accordingly, Claimant established good cause for her absences based on her illness. <u>McKeesport Hosp. v. Unemployment Comp. Bd. of Review</u>, 625 A.2d 112 (Pa. Cmwlth. 1993).

### III. Conclusion

For the foregoing reasons, we reverse the Board's order.

ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donna M. Klampfer,           :
         Petitioner     :
                         :
        v.             :    No. 540 C.D. 2017
                         :
Unemployment Compensation    :
Board of Review,             :
         Respondent    :

# **O R D E R**

**AND NOW**, this 1st day of February, 2018, the order of the Unemployment Compensation Board of Review is hereby **REVERSED**.

 

 

_____
ROBERT SIMPSON, Judge
