IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tammy H. Chimics,                          :
                        Petitioner          :
                                            :
    v.                                      :   No. 1298 C.D. 2017 and
                                            :   No. 1299 C.D. 2017
Unemployment Compensation                   :   SUBMITTED:  November 9, 2018
Board of Review,                            :
                        Respondent          :

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED:  March 13, 2019

Tammy Chimics (Claimant) petitions this Court for review of the August 22, 2017 Orders of the Unemployment Compensation Board of Review (Board) affirming the Referee's decision to deny Claimant unemployment compensation (UC) benefits. The Board concluded that Claimant was ineligible for UC benefits under Section 402(e) of the Unemployment Compensation Law (Law)[1] following her termination for willful misconduct.  After careful review, we affirm.

## Background

Claimant has worked as a high school language arts teacher for the Troy Area School District (District) since August 25, 1999.  Notes of Testimony (N.T.), 6/27/17, at 30.  In the fall of 2016, the District initiated an investigation into allegations that the high school boys' basketball coach (Co-worker), had physically assaulted a player.  *Id.*

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee is ineligible for UC benefits for any week "[i]n which [her] employment is due to [her] discharge . . . from work for willful misconduct connected with [her] work."  43 P.S. § 802(e).

at 26. Co-worker and Claimant were dating at the time. *Id.* at 31. Claimant assisted Co-worker throughout the investigation by gathering and organizing documents related to the investigation. *Id.* Seeking additional input on the investigation, Claimant used her District email address to forward those documents to individuals outside the District's employ. *Id.* at 33-34. As a result of these actions, Claimant was accused of violating several District policies, including a confidentiality policy which prohibited the release of confidential and sensitive information. *Id.* at 14, 16, 20. Claimant was suspended without pay effective April 17, 2017 and terminated by the school board on May 9, 2017.[2] *Id.* at 12, 29.

Claimant applied for UC benefits with the local service center.[3] In her claimant questionnaire, Claimant admitted to having violated the District's policy, but asserted it was not done "intentionally or maliciously." Certified Record, (C.R.), Item No. 2. Claimant maintained that, if she had known she was violating the District's policy, she would have used her personal email address, rather than her District email address. *Id.*

The Altoona Service Center (Service Center) granted Claimant benefits for the period of time during which she was merely suspended for violating the District's policies. C.R., Item No. 4. For the period following Claimant's termination from employment, she was deemed ineligible for benefits under Section 402(e) of the Law. *Id.* Both the District and Claimant appealed. C.R., Item No. 5.

---

[2] Claimant was reinstated to her teaching position at the commencement of the 2017-2018 school year. Claimant's Br. at 7. Consequently, her claim for benefits is limited to that period during which she was suspended or terminated by the District.

[3] For reasons not entirely clear in the record, Claimant initiated two claims for UC benefits. Separate determinations were issued by the Service Center. C.R., Item No. 4. The Referee held one hearing for both appeals but issued separate decisions, as did the Board. *Id.*, Item Nos. 9, 12. The appeals from the Board's orders were consolidated by an order of this Court dated November 17, 2017.

2

A hearing was held before the Referee on June 27, 2017. The District presented the testimony of its Superintendent of Schools, Charles Young. Claimant testified on her own behalf.

Mr. Young testified that, in the course of investigating the allegations against Co-worker, he was tasked by the school board to determine the source of "leaks of information" which identified to the public the students and parents who lodged complaints against Co-worker. *Id.* at 14. A review of Co-worker's District email account indicated he shared documents related to the investigation with Claimant. *Id.* A subsequent review of Claimant's District email account revealed she forwarded those documents, which identified, by name, the student allegedly assaulted by Co-worker as well as the parent who made the initial complaint, to Wayne Holland and Mariah Castle. *Id.* at 24-25, Ex. Nos. E-9 – E-12. Neither Mr. Holland nor Ms. Castle were employed by the District. *Id.* at 22, 25.

Mr. Young testified that the District has a confidentiality policy which is reviewed annually with District employees. *Id.* at 25. Employees are required to sign an acknowledgement that they read and understand the policy. *Id.* Claimant signed such an acknowledgment on August 24, 2016. N.T., 6/27/17, Ex. No. E-1. The policy provides in relevant part that employees are to secure confidential information in their charge. *Id.* An employee who reads confidential information is prohibited from discussing it with another person. *Id.* Employees may only use student and other confidential records if a legitimate need exists. *Id.* Employees who violate the policy are subject to discipline or discharge, depending on the facts and circumstances of the violation. *Id.* Essentially, the policy requires that "identifiable information on students" be kept private and "not broadcast to anybody who does not have an educational need to know." *Id.* at 16. Claimant had no legitimate reason to possess documents related to the investigation of Co-worker. *Id.* at 15. Once she obtained such

information, however, Claimant should have refrained from disclosing it to anyone else. *Id.* at 20.

While investigating potential violations of the confidentiality policy, Mr. Young discovered that Claimant also used her District email account to send what he deemed "press releases" to the Daily Review, a local newspaper, and WETM, a local news affiliate. *Id.* at 17-18. The January 17, 2017 email to the Daily Review contains the following text:

> [Co-worker] conducts his first 3rd and 4th grade basketball practice of the season at the Commons Building Saturday morning on the heels of his suspension from his Varsity coaching position which was handed to him by the school district on Thursday, Dec. 29th. Although the district voted in an executive session held on Wednesday, Dec. 28th to suspend [Co-worker], a violation of the Sunshine Act,[4] he has not been restricted from coaching 3rd and 4th grade basketball nor has he been suspended from his teaching position at the Troy High School. His suspension without pay is pending a [Children and Youth Services] investigation where allegations were brought to the administration that [Co-worker] "in some fashion" "struck" a player at a practice in November. Although high school administration conducted an investigation of [its] own prior to Dec. 28th speaking to players twice about allegations ranging from making a player run for conditioning purposes after being late one hour to practice to hitting a player, the school board still decided in the Dec. 28th executive session to suspend him. Both high school investigations were concluded "unfounded" on all allegations. A school board meeting is being held on Tuesday, Jan. 10th where supporters of [Co-worker] are planning to ask questions of the school board concerning the decision to suspend him in an executive session and not in an open board meeting.

---

[4] The Sunshine Act provides that the public has the right to be notified of and present at meetings of agencies at which any agency business is discussed or acted upon. 65 Pa.C.S. §§ 701-716.

N.T., 6/27/17, Ex. No. E-3. The text of the email sent to WETM differed only slightly, noting that the school board meeting took place and questions from Co-worker's supporters were not answered. *Id.*, Ex. No. E-4. Mr. Young testified that Claimant's conduct violated District policy, as press releases must first be approved by the Superintendent. *Id.* at 16.

Claimant did not deny the conduct which led to her termination. She testified the documents were forwarded to Mr. Holland upon his request, as he was a friend of Co-worker. *Id.* at 33. The documents were shared with Ms. Castle, a friend to both Claimant and Co-worker, "to see if there was anything she could shed light on." *Id.* at 34. At that time, Claimant did not believe she was violating the District's confidentiality policy, and she did not believe the emails sent to the Daily Review and WETM constituted press releases. *Id.* Claimant asserted the matter of Co-worker's suspension was well-known before she disclosed information to Mr. Holland and Ms. Castle, as "[a]ll the kids were talking about it at school." *Id.* at 37.

The Referee found that the District had a confidentiality policy which prohibited the disclosure of private student information, and Claimant acknowledged her receipt of that policy on August 24, 2016. Referee's Decision, Findings of Fact (F.F.) Nos. 5-6. The Referee reasoned that Claimant should have known she was violating the District's policy when she revealed confidential information to individuals not employed by the District and her conduct rose to the level of willful misconduct. Referee's Decision at 3. The Referee further found Claimant sent press releases to the Daily Review and WETM without authorization from the Superintendent. F.F. No. 12. As a result of these policy violations, Claimant was ineligible for benefits under Section 402(e) of the Law, and the Service Center's grant of benefits was reversed. *Id.* at 3.

Claimant appealed to the Board, which adopted and incorporated the Referee's findings and conclusions. Bd.'s Order at 1. Additionally, the Board discredited

5

Claimant's testimony that she was not aware of the District's press release policy and that she did not believe her emails to news outlets constituted press releases. *Id.* Accordingly, the Board affirmed the Referee. *Id.* These appeals followed.

## Issue

On appeal,[5] Claimant argues the Board erred in finding her violation of the District's policies constituted willful misconduct. Claimant does not dispute she violated the policies but maintains her violations were not willful. Claimant asserts that, even if her conduct violated any policies, she had good cause for her actions, as she was assisting her boyfriend with accusations that could result in the loss of his job and the initiation of criminal charges. Claimant implies her disclosure of confidential information was of no consequence because the "entire community" knew about the circumstances of Co-worker's suspension from his position as basketball coach. Claimant's Br. at 15.

## Discussion

Our Court has defined "willful misconduct" as a wanton or willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of the standards of behavior that the employer has a right to expect of its employees, or negligence indicating an intentional disregard of the employer's interests or of the employee's duties and obligations. *Miller v. Unemployment Comp. Bd. of Review*, 83 A.3d 484, 486-87 (Pa. Cmwlth. 2014). An employer seeking to prove that a claimant committed willful misconduct by violating a work policy "must demonstrate the existence of the policy, its reasonableness, and its violation." *Klampfer v. Unemployment Comp. Bd. of Review*, 182 A.3d 495, 500 (Pa. Cmwlth. 2018). If the employer satisfies its burden of proving "the existence of a reasonable work rule and

---

[5] This Court's review is limited to a determination of whether constitutional rights were violated, errors of law were committed, or findings of fact were not supported by substantial evidence. *Oliver v. Unemployment Comp. Bd. of Review*, 5 A.3d 432, 438 n.2 (Pa. Cmwlth. 2010).

its deliberate violation, [then] the burden shifts to the claimant to demonstrate good cause for violating the rule." *Chester Cmty. Charter Sch. v. Unemployment Comp. Bd. of Review*, 138 A.3d 50, 54 (Pa. Cmwlth. 2016).

An employee establishes good cause where her actions are justified or reasonable under the circumstances. *Bell Socialization Servs., Inc. v. Unemployment Comp. Bd. of Review*, 74 A.3d 1146, 1147 (Pa. Cmwlth. 2013). A claimant does not have good cause to violate a work rule where reasonable alternative means exist to address the concerns that led to the violation of the work rule. *Arbster v. Unemployment Comp. Bd. of Review*, 690 A.2d 805, 810 (Pa. Cmwlth. 1997).

The Board's findings are conclusive on appeal so long as the record, taken as a whole, contains substantial evidence to support those findings. *Spiropoulos v. Unemployment Comp. Bd. of Review*, 654 A.2d 642, 644 (Pa. Cmwlth. 1995). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 644, n4.

Here, the District established through the testimony of Mr. Young that it had a policy which prohibited the disclosure of confidential information, and Claimant was aware of that policy. F.F. Nos. 5-6. A violation of the policy could result in termination, depending on the circumstances. N.T., 6/27/17, Ex. No. 1. Claimant came into possession of confidential information when it was forwarded to her by Co-worker. *Id.* at 14. Claimant violated the District's confidentiality policy when she then forwarded that information to individuals not employed by the District. *Id.*, Ex. Nos. E-9 – E-12.

Claimant's assertion that her violation of the confidentiality policy was not willful is contradicted by the record. Claimant deliberately forwarded confidential information to non-District employees, and nothing in the record suggests that her actions were in any way inadvertent or an act of absent-mindedness. While use of a

7

private email address might have allowed Claimant's violation to go undetected, such an action would still constitute a policy violation, as the policy prohibits anyone who obtains confidential information from discussing it with others. Such information may only be used by an employee with a "legitimate educational need" to do so, and the policy contains no exception for information known in certain circles of the community at large. N.T., 6/27/17, Ex. No. E-1. It strains credulity that a teacher employed with the District for 18 years, who has received annual training on the District's confidentiality policy, would not realize her conduct constituted a violation of that policy.

As to Claimant's violation of the District's press release policy, the Board explicitly discredited Claimant's testimony that she was unaware of the policy and that she did not believe her emails constituted press releases. It is well settled that the Board is the ultimate factfinder in UC cases and empowered to determine the credibility of witnesses. *Curran v. Unemployment Comp. Bd. of Review*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000).

Based on Claimant's admissions and Mr. Young's testimony, we conclude the record contains substantial evidence to support the Board's finding that Claimant deliberately violated the District's press release and confidentiality policies.

Because Employer satisfied its burden of proof, the burden then shifted to Claimant to establish good cause for violating the District's policies. Claimant's assertion of good cause is rooted in the consequences that Co-worker faced as the result of the assault allegations against him.

On several occasions, this Court has been tasked with determining whether a claimant's release of confidential information in contravention of an employer's policy was excused for good cause. In *Spiropoulos*, 654 A.2d at 644, a former prison employee was denied UC benefits for copying confidential inmate records and

8

providing them to a prisoner advocacy group, in violation of the employer's policy. This Court concluded the claimant's actions did not constitute good cause, even assuming he acted out of legitimate concern for the rights of inmates. *Id.* at 645. The claimant in *Arbster* was a nurse who accessed confidential medical records for a patient not under her care. 690 A.2d at 807. Despite the fact that the patient was the claimant's mother, the Court concluded the claimant lacked good cause for violating her employer's confidentiality policy because alternative means existed, such as the receipt of written authorization to view the records, which could have addressed any concerns with the care being provided to her mother. *Id.* at 809-10.

Claimant's derogation of her responsibility to safeguard confidential information in an effort to help her boyfriend was not just or reasonable. Accordingly, we conclude that Claimant failed to demonstrate good cause for violating the District's policy.

## Conclusion

Based on the evidence of record, we conclude that Claimant was discharged for willful misconduct under Section 402(e) of the Law and is, therefore, ineligible for UC benefits. Accordingly, we affirm the Board's Orders.


_____
ELLEN CEISLER, Judge

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Tammy H. Chimics, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1298 C.D. 2017 |
| | : | No. 1299 C.D. 2017 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

# **O R D E R**

AND NOW, this 13th day of March, 2019, the Orders of the Unemployment Compensation Board of Review, dated August 22, 2017, are hereby affirmed.

_____

ELLEN CEISLER, Judge