# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Larry A. Bonazza,       :
     Petitioner    :
             :
  v.          : No. 1545 C.D. 2018
             : ARGUED: May 7, 2019
Unemployment Compensation   :
Board of Review,       :
     Respondent   :

BEFORE:  HONORABLE ANNE E. COVEY, Judge
      HONORABLE CHRISTINE FIZZANO CANNON, Judge
      HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER           FILED: May 30, 2019

   Larry A. Bonazza (Claimant) petitions for review of the October 29, 2018 Order of the Unemployment Compensation Board of Review (Board) affirming a Referee's decision to deny Claimant unemployment compensation (UC) benefits. The Board concluded that Claimant was ineligible for UC benefits under Section 402(e) of the Unemployment Compensation Law (Law)[1] because he was discharged from work for willful misconduct. We affirm the Board's Order.

## Background

   Claimant worked as a full-time police officer for Smith Township (Employer) for 27 years until April 21, 2018. Bd.'s Finding of Fact (F.F.) No. 1; *see* Record (R.)

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law states that an employee shall be ineligible for UC benefits for any week "[i]n which his unemployment is due to his discharge . . . from work for willful misconduct connected with his work." 43 P.S. § 802(e).

Item No. 3.[2]  Employer has a written policy, of which Claimant was aware, that prohibits its employees from sleeping while on duty.  Bd.'s F.F. No. 2; *see* Notes of Testimony (N.T.), 9/10/18, Ex. 5.  In 2017, unbeknownst to its police officers, Employer installed tracking devices in all of the officers' vehicles.  Bd.'s F.F. No. 3.

On March 7, 2017, Employer issued a written warning to Claimant for sleeping during a training class on February 21, 2017.  *Id.* No. 4.[3]  On March 9, 2017, Employer also suspended Claimant for using a racial slur to refer to Chief of Police Winford LaRue, who is African-American, on Facebook.  *Id.* No. 5.[4]

In the early morning hours of April 21, 2018, Chief LaRue received a notification from the tracking system that Claimant had parked his patrol vehicle at a strip mine for at least two hours while on duty.  *Id.* No. 6.  Chief LaRue went to that location with a Police Department Supervisor, Mr. Cassidy,[5] and found Claimant sitting inside his

---

[2] The record shows that Employer suspended Claimant from his position on April 21, 2018, pending an internal investigation.  Claimant was discharged on June 20, 2018.  R. Item No. 3.

[3] The March 7, 2017 warning letter stated:

This is to inform you of a written warning for your action of sleeping in class [on] 2-21-2017.  This was during our update training at the Slovan VFW.  You had to be push[ed] by the officers beside you to wake up . . . .

N.T., 9/10/18, Ex. 1.

[4] The March 9, 2017 suspension letter stated:

This is to inform you that you are suspended on 3-9-17 . . . .  This is for your action [o]n Tues[day] 3-7-17 [w]hen you inbox[ed] me[,] the Chief [of Police,] on Facebook "U ON NIGGA[.]"  [T]his was at 5[:]34[p]m.  I do not and will not take that kind[] of talk from any of my officers.  And I will not have my officers speak to the [p]ublic this way.

N.T., 9/10/18, Ex. 2.

[5] Mr. Cassidy's first name does not appear in the record.

2

vehicle with his eyes closed and his head down. *Id.* No. 7; N.T., 9/10/18, at 8. Chief LaRue roused Claimant by illuminating Claimant's vehicle with a flashlight. Bd.'s F.F. No. 8. Chief LaRue asked Claimant why he was sleeping, but Claimant denied sleeping. *Id.* No. 9.

Claimant is a diabetic who experiences physical symptoms when his blood sugar is low. *Id.* No. 11. Claimant did not request any accommodation for his medical condition, nor did he notify Employer that drowsiness or sleepiness could be a consequence of his condition. *Id.* No. 12. Employer terminated Claimant's employment for violating its policy prohibiting sleeping while on duty. *Id.* No. 10.

Claimant filed a claim for UC benefits, which the local Service Center denied. The Service Center found that Claimant was discharged for poor performance, sleeping on the job, and safety violations. Not. of Determ., 8/3/18, at 1. The Service Center concluded that: (1) Claimant's conduct demonstrated a disregard of the standards of behavior that Employer had the right to expect of its employees; and (2) Claimant did not establish good cause for his conduct. *Id.* Therefore, the Service Center determined that Claimant was ineligible for UC benefits under Section 402(e) of the Law. *Id.*

Claimant appealed to the Referee, who held an evidentiary hearing on September 10, 2018. Both Claimant and Chief LaRue testified. Following the hearing, the Referee concluded as follows:

> Although [C]laimant asserts that he was not sleeping when confronted by [Chief LaRue] on April 21, 2018, he asserts that drowsiness and sleepiness are consequences of low blood sugar attacks that he suffers from time to time. [C]laimant attempted to offer a document from a certified nurse practitioner attesting to the symptoms. The document was excluded on the basis of hearsay. Additionally, the document was not authored until well over three months after [C]laimant's separation from employment, rendering it irrelevant.

[E]mployer would have been within its rights to discharge [C]laimant for addressing [Chief LaRue] with a racial slur[,] and after receiving a warning and being suspended for [other] infractions, it became particularly important that [C]laimant strictly adhere to reasonable employer expectations. . . .

Ref.'s Order, 9/11/18, at 2. Thus, the Referee affirmed the Service Center's decision.

Claimant timely appealed to the Board, which affirmed the Referee's decision. The Board adopted the Referee's Findings of Fact and Conclusions of Law and further determined:

[W]hile the Referee did not make an express credibility determination in his Decision, his findings of fact clearly reflect that he resolved any credibility disputes in favor of [E]mployer. The Board discerns no basis to disturb the Referee's findings or his implicit credibility determinations.

Bd.'s Order, 10/29/18, at 1. Therefore, the Board concluded that Claimant was ineligible for UC benefits under Section 402(e) of the Law. Bd.'s Order at 1. Claimant now petitions for review of that decision.[6]

### Analysis

Our Court has defined "willful misconduct" as a wanton or willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of the standards of behavior that the employer has a right to expect of its employees, or negligence indicating an intentional disregard of the employer's interests or of the employee's duties and obligations. *Miller v. Unemployment Comp. Bd. of Review*, 83 A.3d 484, 486-87 (Pa. Cmwlth. 2014). An employer seeking to prove that a claimant committed willful misconduct by violating a work policy "must demonstrate the existence of the policy, its reasonableness, and its violation." *Klampfer v. Unemployment Comp. Bd. of Review*, 182 A.3d 495, 500 (Pa. Cmwlth. 2018). If the

---

[6] Our scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

4

employer satisfies its burden of proving "the existence of a reasonable work rule and its deliberate violation, [then] the burden shifts to the claimant to demonstrate good cause for violating the rule." *Chester Cmty. Charter Sch. v. Unemployment Comp. Bd. of Review*, 138 A.3d 50, 54 (Pa. Cmwlth. 2016).

Here, Employer has a written policy prohibiting its employees from sleeping while on duty. Bd.'s F.F. No. 2; N.T., 9/10/18, Ex. 5. Claimant does not dispute the existence of Employer's policy, his knowledge of the policy, or its reasonableness. Rather, Claimant challenges only the Board's finding that he was asleep while on duty on April 21, 2018.

We conclude that the Board's finding is supported by the testimony of Chief LaRue, which the Board expressly credited. Chief LaRue testified that on April 21, 2018, Claimant was working the midnight-to-8:00-a.m. shift. N.T., 9/10/18, at 8. Around 4:00 a.m. on that date, Chief LaRue observed Claimant sitting inside his parked vehicle with his eyes closed and his head down. *Id.* at 8, 11-12, 14. Chief LaRue testified that, based on the information obtained from the tracking device, he believed Claimant's vehicle had been parked in that location for at least two hours. *Id.* at 8-9. Chief LaRue observed Claimant sleeping inside the vehicle for 10 or 15 minutes, after which Chief LaRue roused Claimant awake with a flashlight. *Id.* at 12. In contrast, Claimant testified that when Chief LaRue approached his vehicle on the morning of April 21, 2018, "I had the window down at the time. I was up. [Chief LaRue] said what are you doing here? I said I'm eating my lunch." *Id.* at 22. The Board, however, discredited Claimant's testimony.

It is well settled that the Board is the ultimate factfinder in UC cases and empowered to determine the credibility of witnesses. *Curran v. Unemployment Comp. Bd. of Review*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000). Where the Board's factual findings are supported by substantial, credible evidence, those findings are conclusive

5

on appeal. *Brandt v. Unemployment Comp. Bd. of Review*, 643 A.2d 78, 79 (Pa. 1994). We conclude that Chief LaRue's credible testimony provides substantial evidence to support the Board's finding that Claimant was sleeping while on duty on April 21, 2018.

Next, Claimant argues that, even if he had been asleep while on duty on April 21, 2018, a single infraction was insufficient to justify his discharge under Employer's policy. At the hearing, Chief LaRue testified that one instance of sleeping on duty would be insufficient to result in an employee's discharge and that "at least two" instances would be required for a discharge. N.T., 9/10/18, at 12. Claimant contends that only one sleeping infraction occurred on April 21, 2018. According to Claimant, the prior sleeping incident in March 2017 occurred during a training session and not while he was "out 'on duty.'" Claimant's Br. at 8. Thus, Claimant argues that he should not have been discharged pursuant to Employer's policy.[7]

Although Claimant raised this issue in his appeal to the Board, the Board did not address it. We conclude, however, that this oversight does not necessitate a remand to the Board.

Even in the absence of Employer's policy, we conclude that Claimant committed willful misconduct in this case. It is well settled that "sleeping on the job is *prima facie* an act of willful misconduct, for it falls within either 'wanton and wil[l]ful disregard

---

[7] Although Claimant asserts that he was not "on duty" during the March 2017 sleeping incident, the record shows that the incident occurred during an Employer-sanctioned training session. Chief LaRue credibly testified that the session was "a yearly update[] training for municipal police officers that [Employer] hosted at [the] Slovan VFW for at least 40 to 50 officers[,] including my whole department." N.T., 9/10/18, at 6. Furthermore, Employer disciplined Claimant for sleeping during the training session, Bd.'s F.F. No. 4; N.T., 9/10/18, Ex.1, further indicating that Claimant was "on duty" when the March 2017 incident occurred. Contrary to Claimant's assertion on appeal, Chief LaRue did not indicate that an officer was required to be "out" on patrol for a sleeping incident to qualify as a violation of Employer's policy, nor did Claimant present any evidence to support such an interpretation.

6

of the employer's interest,' or 'disregard of standards of behavior which an employer can rightfully expect [of its employees].'" *Ragland v. Unemployment Comp. Bd. of Review*, 428 A.2d 1019, 1020 (Pa. Cmwlth. 1981) (citation omitted); *see Biggs v. Unemployment Comp. Bd. of Review*, 443 A.2d 1204, 1205 (Pa. Cmwlth. 1982); *Tundel v. Unemployment Comp. Bd. of Review*, 404 A.2d 434, 435-36 (Pa. Cmwlth. 1979). An employer need only establish that the claimant was sleeping at work to satisfy its burden. *Unemployment Comp. Bd. of Review v. Simone*, 355 A.2d 614, 616 (Pa. Cmwlth. 1976). As discussed above, the record contains substantial evidence to support the Board's finding that Claimant fell asleep during his shift on April 21, 2018.

Because Employer met its burden of proving that Claimant committed willful misconduct, the burden shifted to Claimant to establish good cause for sleeping on the job. *Biggs*, 443 A.2d at 1205. Claimant testified that, on the morning of April 21, 2018, he pulled over during his shift because his blood sugar level had dropped and he felt "jittery." N.T., 9/10/18, at 23-25. Claimant testified that he stopped to buy lunch and then parked his vehicle at the strip mine because he did not believe it was safe to drive. *Id.* at 26. He stated that he ate lunch and began to feel better "right before" Chief LaRue approached his vehicle. *Id.* The Board, however, discredited Claimant's testimony. Bd.'s Order, 10/29/18, at 1. The Board also found that although Claimant has diabetes, Bd.'s F.F. No. 11, he never notified Employer that drowsiness or sleepiness could be a consequence of his condition or otherwise affect his employment, *id.* No. 12. Therefore, we conclude that Claimant failed to establish that his sleeping on the job was justified by his medical condition.[8]

---

[8] At the hearing, Claimant attempted to introduce into evidence an August 1, 2018 letter from a nurse practitioner to Employer concerning Claimant's medical condition and resulting symptoms. N.T., 9/10/18, at 22. The Referee precluded the letter on both hearsay and relevancy grounds. *Id.*; *see* Ref.'s Order, 9/11/18, at 2. Claimant does not challenge that evidentiary ruling on appeal.

## Conclusion

Based on the credible evidence of record, we conclude that Claimant was discharged for willful misconduct under Section 402(e) of the Law and is, therefore, ineligible for UC benefits.  Accordingly, we affirm the Board's Order.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Larry A. Bonazza,              :
             Petitioner      :
                                 :
       v.                      :   No. 1545 C.D. 2018
                                 :
Unemployment Compensation   :
Board of Review,              :
             Respondent     :

## **O R D E R**

AND NOW, this 30th day of May, 2019, the Order of the Unemployment Compensation Board of Review, dated October 29, 2018, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge