# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eugene F. Connell,              :
             Petitioner    :
                        :
        v.               :   No. 328 C.D. 2019
                        :   Submitted: September 20, 2019
Unemployment Compensation Board   :
of Review,                  :
             Respondent   :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE ROBERT SIMPSON, Senior Judge

<u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION**
**BY SENIOR JUDGE SIMPSON**        **FILED: November 21, 2019**

Eugene F. Connell (Claimant) petitions for review from an order of the Unemployment Compensation Board of Review (Board) deeming him ineligible for unemployment compensation (UC) benefits under Section 402(e) of the UC Law.[1] Claimant argues he did not commit willful misconduct because his policy violations lacked intent, and so were not deliberate. Discerning no error below, we affirm.

## I. Background

Claimant worked full-time for Southeastern Pennsylvania Transportation Authority (Employer) from January to August 2018. Bd. Op., 2/25/19, Finding of

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, <u>as</u> <u>amended</u>, 43 P.S. §802(e) (relating to willful misconduct).

Fact (F.F.) No. 1. Claimant was aware of Employer's work rules that prohibited the following: leaving work without permission; providing false information; and using a cell phone during shifts. F.F. Nos. 2-3. On August 12, Claimant used his phone to access Facebook; left from 6:40 p.m. to 8:10 p.m. without permission for a 90-minute absence; and recorded on his timesheet that he worked a full eight hours. F.F. Nos. 4-5; see Reproduced Record (R.R.) at 71a-72a, 69a, 65a-66a.

On August 20, Employer terminated Claimant's employment for violating its policies, including falsifying documents, use of social media/non-work-related internet use, theft of time, and unauthorized absence from work. F.F. No. 6. Thereafter, in October 2018, Employer reinstated Claimant and converted his discharge to a one-day suspension for misuse of company time and leaving work without authorization.[2] F.F. No. 7.

Claimant filed for UC benefits, which the local service center denied. Subsequently, he appealed, and a referee held a hearing. Claimant testified on his own behalf; Employer's manager of labor relations (LR Manager), chief inventory controller (Controller), and Claimant's manager (Supervisor), testified on behalf of Employer.

Claimant described the events leading to his discharge as follows. When he arrived to work on August 12, Claimant discovered a mother cat and her newborn kittens outside Employer's property, which Employer's assistant director

---

[2] Employer reinstated Claimant's employment after he filed for UC benefits and filed a grievance regarding his termination from employment. Reproduced Record (R.R.) at 37a-38a. At issue in this appeal are benefits for the weeks between Claimant's termination and his reinstatement on October 7, 2018, as a result of a settlement of Claimant's grievance.

planned to exterminate the next morning. The kittens needed immediate relocation as a coworker's earlier attempts to locate a home for the kittens were unsuccessful. In the interest of saving the kittens Claimant used his cell phone to post photographs of the kittens to Facebook to find them a home. Claimant knew Employer did not permit cell phone use during work, but maintained he was able to perform his duties while on Facebook. That evening, when a shelter offered to house the kittens, Claimant notified his foreman that he was leaving to take them to the shelter. He did not indicate that the trip would exceed his lunch break of 30 minutes. Although the trip took longer than he expected, Claimant did not contact the foreman about his delayed return. He admittedly did not clock out when he left the site; rather, he recorded that he worked a full eight-hour workday on his timecard.

LR Manager, who handled Claimant's grievance, confirmed the grounds for Claimant's discharge. She submitted a copy of the settlement reinstating Claimant. She testified that each of Claimant's policy violations, i.e., unauthorized absence, non-work-related internet use, falsifying company documents (timesheets) and time theft, was a dischargeable offense. Supervisor testified that he managed Claimant, and he learned about the incident from his daughter, who worked at the shelter.

Controller investigated the incident underlying Claimant's discharge. He interviewed employees, including Claimant, and viewed Employer's video footage showing Claimant left work at 6:40 p.m. and did not return until 8:10 p.m., 90 minutes later. During his interview with the foreman, Controller learned that Claimant advised the foreman he was going to lunch and would return shortly; Claimant did not have permission to leave for 90 minutes. Controller also

3

discovered Claimant posted a timeline of the kitten transport on social media, noting what he was doing, addresses, times, and his place of employment. One of the posts included derogatory comments about Employer's assistant director.

Based on the evidence, the referee deemed Claimant ineligible for UC benefits under Section 402(e) of the UC Law, 43 P.S. §802(e), for deliberately violating Employer's policies without good cause. Now assisted by counsel, Claimant appealed to the Board, arguing his violations were not deliberate, in that he had permission for his absence and his inflated time record was unintentional.

The Board made its own findings, which provide, in pertinent part:

2. [Employer] has a policy, of which [Claimant] was aware, that prohibits employees from leaving the workplace without permission.

3. [Employer] also has policies, of which [Claimant] was aware, that prohibit employees from supplying false information and that prohibit cell phone use in the workplace.

4. On August 12, 2018, [Claimant] accessed his Facebook account using his cell phone and left his work station without receiving permission from 6:40 PM to 8:10 PM.

5. [Claimant] marked on his timesheet that he worked a full 8 hours on August 12, 2018.

6. [Employer] discharged [Claimant] for falsifying company documents, conduct unbecoming, use of social media, non-work[-]related internet use, theft of time, and for being absent from workplace without proper authority.

4

7. [Employer] reinstated [Claimant] and converted his discharge into a 1-day suspension for misusing company time and leaving his assigned duties without proper authorization.

Bd. Op., F.F. Nos. 2-7.

The Board emphasized that despite being aware of Employer's policies prohibiting such behavior, Claimant left work without permission, falsely recorded an eight-hour work day, and accessed Facebook with his cell phone. The Board acknowledged that while it "may be likely" Claimant received permission to leave work, there was no evidence to suggest Claimant "received permission to leave work for a full hour and a half." Bd. Op. at 2 (emphasis added). Critically, the Board expressly rejected Claimant's testimony that his eight-hour time record was a mere "absence of mind." Id. Concluding that Claimant deliberately violated Employer's policies, the Board denied UC benefits under Section 402(e) of the UC Law. Claimant now petitions for review.

## II. Discussion

On appeal,[3] Claimant argues his actions did not constitute willful misconduct to render him ineligible for UC benefits. Although he admits that he left work for a 90-minute period, and that his time card did not reflect the length of his absence when he clocked in and out for the work day, Claimant insists that his failure to account for this absence on his time cards was a mere oversight, not a falsification of time records. He also asserts that he had good cause for leaving work in order to

___

[3] Our review is limited to discerning whether substantial evidence supports the Board's findings, whether the Board committed an error of law, or whether constitutional rights were violated. Klampfer v. Unemployment Comp. Bd. of Review, 182 A.3d 495 (Pa. Cmwlth. 2018).

5

rescue the stray kittens onsite. See Howard Hanna Holdings, Inc. v. Unemployment Comp. Bd. of Review (Pa. Cmwlth., No. 1430 C.D. 2013, filed Apr. 3, 2014), 2014 WL 1329171 (unreported)[4] (claimant's absence from work was justified where her dog required emergency veterinarian care).

Case law defines willful misconduct as: (1) a wanton or willful disregard of an employer's interests; (2) a deliberate violation of work rules; (3) a disregard of the standards of behavior an employer can reasonably expect of its employees; or (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations to the employer. Klampfer v. Unemployment Comp. Bd. of Review, 182 A.3d 495 (Pa. Cmwlth. 2018). The employer bears the burden of proving a claimant's actions rose to the level of willful misconduct. Id.

When willful misconduct involves a violation of an employer's policy, an employer must prove the existence of a reasonable policy and the claimant's intentional or deliberate violation of it. Id. Once the employer meets its burden, the burden shifts to the claimant to establish good cause for his violations, meaning that his actions were justified or reasonable under the circumstances. Id. In assessing good cause, the courts consider the totality of circumstances. See Grieb v. Unemployment Comp. Bd. of Review, 827 A.2d 422 (Pa. 2003) (considering claimant's intent, personal stress, and limited time to remove weapons from her car before reporting to work at school, her violation of employer's no weapons policy did not constitute willful misconduct).

---

[4] We cite this case for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

Claimant maintains his violations of Employer's policies resulted from his well-intentioned efforts to rescue stray kittens, such that his conduct was the product of "mere[] negligence." Id. at 426. Considering the totality of circumstances, including the reason for his actions, Claimant argues he did not possess the requisite intent for his rule violations to constitute willful misconduct. We disagree.

A claimant's falsification of employer's time records constitutes a disregard for reasonable behavioral standards an employer has a right to expect from its employees. Henninger v. Unemployment Comp. Bd. of Review, 468 A.2d 1191 (Pa. Cmwlth. 1983) (testimony from employer's witness that claimant admitted to falsifying overtime hours and time cards was sufficient to prove willful misconduct). Where an employer satisfies its burden of proving an employee falsified time sheets in order to receive additional pay for hours not worked, "[n]o such good cause defense exists." Kamau v. Unemployment Comp. Bd. of Review (Pa. Cmwlth., No. 1939 C.D. 2015, filed Mar. 30, 2016), slip op. at 6-7, 2016 WL 1243491, at *3 (unreported) (falsification of timekeeping records constituted willful misconduct).

Claimant admits to recording an eight-hour work day despite that he worked six and one-half hours, but alleges he did so with an "absence of mind" without "mal intent." Referee's Hr'g, Notes of Testimony (N.T.), 11/26/18, at 14. Claimant's "assertion that he lacked the requisite *mens rea* to commit willful misconduct is premised solely on his own testimony, but that testimony was not credited by the Board." Schiavo v. Unemployment Comp. Bd. of Review (Pa. Cmwlth., No. 1880 C.D. 2016, filed Sept. 1, 2017), slip op. at 12, 2017 WL 3798786,

7

at *6 (unreported) (emphasis added). Further, an employer is not required to show intent to mislead to establish the falsification of time cards is willful misconduct. Id.

Important here, as in Schiavo, the Board did "not credit [Claimant's] testimony that his act of recording that he worked a full 8 hours was a mere 'absence of mind.'" Bd. Op. at 2 (emphasis added). As a result, the Board concluded Claimant lacked good cause for misrepresenting the number of hours worked.

We are unpersuaded that Claimant had good cause for his policy violations based on his belief that he had permission to leave work for the purpose of transporting the kittens. First, as the Board found, there is no evidence Claimant had permission for a 90-minute absence from work.[5] In fact, Claimant testified he did not intend to be gone for more than a half hour, N.T. at 13, which is consistent with Controller's testimony that employees receive 30 minutes for lunch. As such, there is no evidence that Claimant secured permission for his 90-minute absence. See Kustafik v. Unemployment Comp. Bd. of Review, 462 A.2d 947 (Pa. Cmwlth.

---

[5] Claimant testified he "told [the foreman] that I had found a safe spot for the cats, but I would have to leave for a little bit." Referee's Hr'g, Notes of Testimony (N.T.), 11/26/18, at 15 (emphasis added). Yet, he admitted:

> When I left the depot, I had no intentions of being any longer than half an hour. Unfortunately, when I went there, answered a couple questions with the [shelter] and signed a couple – to let her know that there are no—that I didn't individually see any abuse taking place, or that I had any knowledge the cats were abused in any way shape or form, and I ended up being a little later than I thought it was.

N.T. at 13 (emphasis added). When questioned as to why he did not contact the foreman when the trip took longer than expected, Claimant testified that he "was in the heat of the moment … [and] [he] just didn't." N.T. at 16. That did not excuse his duty to communicate with Employer about his absence. See Giarrizzo v. Unemployment Comp. Bd. of Review (Pa. Cmwlth., No. 632 C.D. 2013, filed Nov. 18, 2013), 2013 WL 6081740 (unreported).

8

1983) (claimant's unauthorized absence from work for one-and-a-half hours during her critical supervision duties constituted willful misconduct).

Second, the permission issue is only relevant to whether Claimant violated the unauthorized absence rule. Presuming that Claimant had permission to leave work, with the understanding that his absence would be of unspecified duration to transport the kittens to the shelter, permission to leave only excuses his 90-minute absence from work, *not* his failure to properly record his absence on his time card.

While we do not question the endangerment of the stray kittens, or Claimant's motivation to save them, we discern no connection between Claimant's failure to properly record his hours worked and a successful kitten rescue. Indeed, the reason Claimant left work, though laudable, does not excuse him from claiming more time than he worked. Cf. Howard Hanna Holdings. Regardless of the reason, the falsification of Employer's time records constitutes willful misconduct under the Law. Kamau; see also Temple Univ. v. Unemployment Comp. Bd. of Review, 772 A.2d 416 (Pa. 2001).

The Board's finding that Claimant falsely recorded his hours on his time card is supported by substantial evidence. Claimant admitted he recorded a full eight-hour shift, without accounting for his 90-minute absence, which conduct alone substantiates the Board's denial of UC benefits under Section 402(e) of the UC Law.

### III.  Conclusion

For the foregoing reasons, we affirm the Board's order.


_____

ROBERT SIMPSON, Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eugene F. Connell,  
               Petitioner

          v.

Unemployment Compensation Board  
of Review,  
             Respondent

:  
:  
:  
:  
:    No. 328 C.D. 2019  
:  
:  
:  
:  

## O R D E R

**AND NOW**, this 21st day of November 2019, the order of the Unemployment Compensation Board of Review is **AFFIRMED**.

_____  
ROBERT SIMPSON, Senior Judge